UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROSALIE LABO, as
Administratrix Ad
Prosequendum and as General
Administratix of the Estate
of MICHAEL DIVIGENZE,
deceased,

        Plaintiff,

   v.

ROBERT BORGER, et al.

        Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 02-3975

**OPINION**

**APPEARANCES:**
RAYMOND J. RAPPOSELLI
Washington Professional Campus
900 Route 168 -Suite D-5
Turnersville, NJ 08012
(856) 232-7000
    Attorneys for Plaintiff

HOLSTON, MACDONALD, UZDAVINIS & ZIEGLER
By: JOHN C. EASTLACK, JR.
66 Euclid Street, P.O. Box 358
Woodbury, NJ 08096
(856)848-5858

OFFICE OF THE CITY ATTORNEY
By: JONATHAN E. DIEGO
City Hall
Suite 419
P.O. Box 95120
Camden, NJ 08101
(856)757-7170
    Attorneys for Defendants Robert Allenbach, Robert Borger,
    City of Camden, and Camden City Police Department

CRAWSHAW, MAYFIELD, TURNER, O'MARA, DONNELLY & MCBRIDE
By: LINTON W. TURNER
    SUZANNE K. COLLINS

1

2201 Route 38, Suite 300
Cherry Hill, NJ 08002
(856)667-2600
    Attorneys for Defendants Joseph Villari and Roe Corporations
    d/b/a Villari's Lakeside Inn

**IRENAS**, Senior District Judge:

     Presently before this Court is Defendants Joseph Villari and
Villari's Lakeside Inn's Motion for Summary Judgment.  Fed. R.
Civ. P. 56 provides that summary judgment is appropriate only "if
the pleadings, depositions, answers to interrogatories and
admissions on file, together with affidavits, if any, show that
there is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law."  *See
also Celotex Corp. v. Catrett*, (1986).  In deciding a motion for
summary judgment, the court must construe the facts and
inferences in a light most favorable to the non-moving party.
*Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.
1986).

     When viewing the facts in such a light, the Court finds that
Plaintiff cannot show causation, or, in other words, that the
acts or omissions of Joseph Villari and Villari's Lakeside Inn
(collectively "Villari's") caused the harm suffered by Michael
DiVigenze.  The New Jersey Supreme Court has decided that
findings of proximate cause are based on "mixed considerations of
logic, common sense, justice, policy and precedent."  *Caputzal v.
The Lindsay Co.*, 48 N.J. 69, 77-78 (1966).  We find that no

2

reasonable jury, employing the principles identified in *Caputzal*, could find a causal link between the Defendants' behavior and the harm that befell Michael DiVigenze.  We reach this conclusion assuming that Plaintiff has raised genuine issues of material fact or law as to whether Villari's owed a duty to protect DiVigenze from the criminal acts of third parties, and that it breached that duty.  Defendants' Motion for Summary Judgment will be granted.


I.

This lawsuit stems from a bar fight that occurred at Villari's the night of September 1, 2000.  Villari's is a bar and restaurant complex located on Sicklerville Road in Sicklerville, Gloucester Township, NJ.  During the altercation, Robert Borger ("Borger"), an off-duty police officer, fatally shot Michael DiVigenze ("DiVigenze").


A.

DiVigenze's mother, Rosalie Labo ("Plaintiff"), as Administratrix ad Prosequendum and as General Administratrix for the Estate of DiVigenze, filed suit in federal court on August 16, 2002.  The twelve count complaint named Joseph Villari and Roe Corporations d/b/a Villari's as Defendants, along with the Camden County Police Department ("C.C.P.D"), the Somerdale Police

Department ("S.P.D"), chiefs of both the C.C.P.D. and the S.P.D., Borger, and Chris Campbell, another off-duty police officer who was in attendance that night.[1]

Relevant to the instant motion is the twelfth count of the Complaint in which the Plaintiff alleges a claim of negligence against Villari's.  Specifically, Plaintiff contends that Villari's did not adequately protect its patrons from the criminal actions of third parties,

B.

The following describes the sequence of events that occurred on the night of September 1, 2000.

Villari's Lakeside Inn is a combination bar and restaurant in Gloucester Township.  The "Tiki Bar," where the events took place, is a covered, exterior deck area facing a lake.  On the night of September 1, 2000, bartenders Brian Kidd ("Kidd") and Eileen Whelan were working with two other employees.  Villari's did not provide bouncers or other security personnel.  While Villari's has security cameras near the bar, they are only used to observe the area from another location and do not make video recordings.

Between 10:00 p.m. and 11:00 p.m., members of the Warlock

---

[1] On November 19, 2004, this Court dismissed with prejudice those claims against the Borough of Somerdale, the Somerdale Police Department and Officer Christopher Campbell.

motorcycle gang arrived at the Tiki Bar.  Although the exact number of Warlocks present on September 1, 2000, is unknown, witnesses in attendance on that night estimate that 10 to 15 Warlocks arrived at the bar.  DiVigenze, known within the motorcycle gang as "Wolf," was one of the Warlocks present.  Others members present at the time of the incident were Joseph Marsh ("Marsh") and Jeffrey Hampton ("Hampton"), known within the gang as "Death Row."[2]

Between 12:00 a.m. and 1:00 a.m., Robert Borger ("Borger"), an off-duty Camden City Police Officer arrived at the Tiki Bar with friends.  Borger's party included John Frett, Annie Frett and Jessica McKeever.  While there, he was introduced to Chris Campbell ("Campbell"), an off-duty Somerdale Police Officer, and Tracy Holmes, an off-duty Gloucester Township Police Officer.  None of the officers were wearing police uniforms.  Approximately ten other patrons were at the bar at 1:00 a.m.

Between 10:00 p.m. and 1:00 a.m., the Warlocks drank without incident.  However, around 1:00 a.m., Hampton and Kidd had a verbal exchange regarding a female patron Kidd was attempting to keep away from Hampton.  Hampton went to speak to the female patron and then returned to the bar area a few moments later and began assaulting Kidd.  At this time, a large-scale brawl

---

[2] Plaintiff neither denies nor admits DiVigenze's affiliation with the Warlock gang, although, in sworn statements, Marsh stated that DiVigenze was a member of the Warlocks.

5

erupted.  Witness statements vary as to the number of Warlocks present in the bar at the time of the fight; some reports indicate as few as 4 or 5 Warlocks, while others maintain that there were as many as 12.  The brawl consisted of a series of distinct incidents of violence against bar patrons and employees.

The details of the ensuing bar brawl are hotly disputed.  In his sworn statement, Campbell explains that he attempted to intervene after observing a number of Warlocks assaulting a man near the jukebox, opposite the bar area.  After identifying himself as a police officer and pleading with the Warlocks to stop, Campbell claims that DiVigenze turned on him and punched him with a closed fist.  Campbell then accused DiVigenze of assaulting an officer and instructed him to remain at the bar to be arrested.

Campbell recalls that DiVigenze then produced a folding-type knife and started to advance toward him while Campbell retreated. After events closer to the bar area drew his attention away from Campbell, DiVigenze stopped advancing on Campbell and went towards the bar area.

Campbell further recalls that when DiVigenze reached the bar, Borger, who was in that area, identified himself as a police officer.  According to Campbell, DiVigenze then threw a barstool at Borger, knocking him to the ground.  Campbell saw DiVigenze approach Borger, still brandishing the knife.  Borger regained

6

his composure and fired at DiVigenze.

The Complaint describes a somewhat different sequence of events.  Plaintiff maintains that, DiVigenze left the bar shortly after Hampton's initial assault on Kidd.  While on his way out of the bar, Campbell ordered him back to the bar and accused him of assaulting an officer.  Plaintiff claims that when DiVigenze returned, Borger identified himself as a police officer and drew his gun.  Plaintiff specifically denies that DiVigenze brandished a knife.  Plaintiff admits that Borger was hit by a barstool, although she does not indicate who threw the barstool. Plaintiff claims that Borger fired his weapon at DiVigenze, causing injuries from which DiVigenze eventually died.  Borger does not deny firing the fatal shots, but contests Plaintiff's version of DiVigenze's conduct.

Whelan and Kidd each called 911 while the fight was in progress.  Gloucester Township Police arrived shortly after the shooting and took control of the crime scene.  Detective Vince Conley of the Gloucester Township Police began an investigation when he arrived at the scene.

## II.

The fundamental elements of a negligence claim are (1) a duty recognized by law requiring the defendant to conform or to attain safety standards, (2) a failure by defendant to conform to

this standard, (3) a reasonably close causal relationship between the defendant's conduct and the resulting injury, and (4) actual loss or damage.  W. Page Keeton, *Prosser and Keeton on Torts* (5th ed. 1984).  Plaintiffs carry the burden of proof at trial to show that Villari's owed a duty to the DiVigenze, that it breached that duty, and that the breach was the proximate cause of the damages incurred.  *See Anderson v. Sammy Redd & Assoc.*, 278 N.J. Super. 50, 56 (App. Div. 1994).

### III.

### A.

The New Jersey Supreme Court has held that business owners and operators have a limited duty to protect their clients from the foreseeable criminal acts of third parties.  *Butler v. Acme Markets, Inc.*, 89 N.J. 270 (1982) (finding that a supermarket had a duty to install adequate safety measures after a series of violent attacks in its parking lot).  The exact circumstances of any incident will vary, so the determination of duty must be made on a case by case basis.  *Clohesy v. Food Circus Supermarket*, 149 N.J. 496, 520 (1997).

The existence of a duty to protect patrons from the criminal acts of third parties is a question of law for the courts to decide.  *Id.* at 502.  Similarly, the scope of the duty is a question for the courts to determine.  *Kelly v. Gwinnell*, 96 N.J.

538, 552 (1984).  However, the court must rely on the factual
record before it when determining these questions of law.
Because the parties disagree on the events of the night in
question, we must view the facts, for the purposes of determining
the existence and scope of a legal duty, in the light most
favorable to the non-moving party.

Courts use various factors to determine whether a business
owes its customers a duty.  *Dunphy v. Gregor*, 136 N.J. 99, 107
(1994).  Two factors relevant to this case include (1) the
foreseeability of harm and (2) the opportunity to prevent it.
*Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339 (1928) (defining a
duty owed to customers by those risks that are reasonably
foreseeable); *Carvahlo v. Toll Bros. and Developers*, 143 N.J.
565, 572 (1996) (finding that it is in the interest of society to
impose a duty when effective precautions are reasonably
available).


B.

_____We will assume for the purposes of this Motion for Summary
Judgment that Plaintiff has established that Villari's owed a
duty to protect its patrons from possible criminal acts of third
parties.[3]  Security measures, like bouncers and clientele

---

[3] We note that the determination that a duty exists is very fact
specific and dependant on the precise context of the situation.  *See, e.g.,
Clohesy*, 149 N.J. at 520.

9

screening, are certainly available, and courts have recognized that in certain circumstances a business may have a duty to provide these protections. *See, e.g.*, *Goldberg v. Housing Authority of Newark*, 38 N.J. 578, 597 (1962) (finding that there are certain circumstances where business owners should recognize a duty to supply security personnel); *Clohesy*, 149 N.J. at 1028 (noting that security personnel have become more common place in public facilities and cannot be considered an extravagant measure); *Kuehn v. Pub Zone*, 364 N.J. Super. 301, (App. Div. 2003) (upholding liability where a bar abandoned its own clientele screening policy). Plaintiff has also suggested that escalating criminal acts were foreseeable because Villari's had called for police assistance eighty-three times in the five years prior to the incident.[4] (R. Paul McCauley Expert Report, Pet'r Brief, App. C.). We will accept, for the purposes of this motion only, that Villari's had a duty to provide a bouncer as well as some form of screening for patrons entering the bar.

---

[4] Even viewing the facts in a light most favorable to Plaintiff, this Court has difficulty accepting Plaintiff's conclusion that an average of one call a month to the local police is foreshadowing of violent criminal activity. We recognize that the New Jersey Supreme Court has adopted the "totality of the circumstances" approach and held that criminal acts of a lesser degree may create constructive notice that criminal acts of a greater degree may occur. *See Clohesy*, 149 N.J. at 514. In this case, however, there is no description of the content or context of these calls in the record. Police assistance may be requested for a variety of reasons. There is no way to determine if all, most, or even some of the eighty-three calls were made to report criminal acts. Even assuming that all the calls were related to a law being broken, the Court notes that there is a big difference between reporting non-violent crimes, such as illegal parking, underage drinking, refusing to leave at closing time, and bar brawls.

IV.

Even if we accept, for the purpose of this motion, that
Villari's had a duty to provide security measures to protect
patrons from the criminal acts of other patrons, there is
absolutely nothing in the record to support a conclusion that the
absence of such measures proximately caused the injury in this
case. *Caputzal* requires a logical and sensible relationship
between the breach and the harm.  48 N.J. at 78.  The law
requires that there be a realistic causal connection between the
breach of duty and the harm.  Villari's breach of duty must be
the proximate cause of plaintiff's death from the gunshot wounds
inflicted by a fellow patron who was an off-duty police officer.

The record is devoid of any evidence that would suggest that
screening potential customers will have kept DiVigenze, Hampton
or any of their friends from entering the bar.  By the bikers'
and the other patrons' own accounts, DiVigenze and the other
bikers were peaceably drinking for the better part of the
evening.  Indeed, by Plaintiff's own account, DiVigenze was a law
abiding patron and an innocent bystander.  There is no indication
that the bar brawl or any fighting was planned, or even crossed
the bikers' minds when they arrived at Villari's.  It is not the
job of a bouncer to turn away potential customers who give no
indication that they intend to or will incite violence.

Furthermore, there is no evidence that if security personnel

11

were present that they would or could have stopped the fight or the shooting by an off-duty police officer.  It is only sheer speculation to conclude that the presence of a bouncer would have prevented the brawl in the first instance, or make unnecessary the intervention of an off-duty police officer once the brawl started.  An off duty officer has a "right and duty" to intervene when he witnesses someone violating the law.  *State v. Hinds*, 143 N.J. 540, 548 (1996).  There's nothing in the record to suggest that any bouncer or other employee of Villari's could or would have prevented off-duty officers Borger and Campbell from attempting to protect the safety of other patrons and restore order.

Because Plaintiff cannot establish that the lack of security personnel or security measures was the proximate cause of the fatal shooting of DiVigenze by an off-duty police officer who was a fellow patron, summary judgment will be granted in favor of Villari's.

V.

For the reasons set forth above, Villari's Motion for Summary Judgment will be granted.

Date:   7/27/05

s/Joseph E. Irenas
Joseph E. Irenas, S.U.S.D.J.

12