UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROSALIE LABO, as Administratrix Ad Prosequendum and as General Administratix of the Estate of MICHAEL DIVIGENZE, deceased,<br><br>    Plaintiff,<br><br>  v.<br><br>ROBERT BORGER, et al.<br><br>    Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 02-3975<br><br>**OPINION** |

**APPEARANCES:**
RAYMOND J. RAPPOSELLI
Washington Professional Campus
900 Route 168, Suite D-5
Turnersville, NJ 08012
(856) 232-7000
     Attorneys for Plaintiff

HOLSTON, MACDONALD, UZDAVINIS & ZIEGLER
By: JOHN C. EASTLACK, JR.
66 Euclid Street, P.O. Box 358
Woodbury, NJ 08096
(856)848-5858

OFFICE OF THE CITY ATTORNEY
By: JONATHAN E. DIEGO
City Hall
Suite 419
P.O. Box 95120
Camden, NJ 08101
(856)757-7170
     Attorneys for Defendants Robert Allenbach, Robert Borger,
     City of Camden, and Camden City Police Department

**IRENAS**, Senior District Judge:

Presently before the Court is a Motion for Summary Judgment by Defendants City of Camden, Camden City Police Department ("C.C.P.D."),[1] and Police Chief Robert Allenbach[2] (collectively "Defendants").[3] Plaintiff alleges that Defendants violated 42 U.S.C. § 1983, and are additionally liable for common law negligence. The § 1983 charge consists of two independent allegations: (1) that Defendants implemented a poorly conceived, unconstitutional policy and (2) that Defendants failed to train Robert Borger, a C.C.P.D. Officer, resulting in the deprivation of Michael DiVigenze's constitutional rights. This Court's jurisdiction is based on 28 U.S.C. § 1331.

Summary judgment will be granted in part and denied in part. Plaintiff has failed to demonstrate that § 1983 liability is warranted, and so Defendants cannot be held liable for the alleged constitutional violations committed by an employee, Officer Borger. In addition, Plaintiff has not raised any issues of material fact as to her state law claims for failure to train and negligent hiring. However, Plaintiff has raised a triable

---

[1] Throughout both the Complaint and this Opinion, the City of Camden and the C.C.P.D. are referred to as separate entities. In fact, there is no legal entity known as the C.C.P.D., and any municipal liability is that of the City of Camden.

[2] Chief Allenbach is sued only in his official capacity.

[3] Defendant Robert Borger has not joined any of these motions.

issue of fact as to vicarious liability of Defendants City of Camden and C.C.P.D. for the alleged negligent acts of Officer Borger.

## I.
### A.

This lawsuit stems from a bar fight that occurred at Villari's Lakeside Inn ("Villari's") the night of September 1, 2000. Villari's is a bar and restaurant complex located on Sicklerville Road in Sicklerville, Gloucester Township, New Jersey. During the altercation, Robert Borger ("Borger"), an off-duty police officer, fatally shot Michael DiVigenze ("DiVigenze").

DiVigenze's mother, Rosalie Labo ("Plaintiff"), as Administratrix ad Prosequendum and as General Administratrix for the Estate of DiVigenze, filed suit in federal court on August 16, 2002. The 12-count complaint named the City of Camden, the C.C.P.D. and its police chief, Robert Allenbach ("Allenbach"), as Defendants, along with the Somerdale Police Department ("S.P.D"), the S.P.D. Police Chief Charles Pope, Borger, Chris Campbell (another off-duty police officer who was at Villari's on September 1, 2000), Joseph Villari and Roe Corporations, d/b/a

3

Villari's Lakeside Inn.[4]

Plaintiff alleges that the City of Camden, the C.C.P.D. and Allenbach violated the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, and are also liable for common law negligence. Plaintiff claims that as a result of Defendants' failure to implement a proper police policy and train municipal employees, DiVigenze was unlawfully denied his constitutionally protected rights under the First, Fifth and Fourteenth Amendments, as well as forced to endure extreme pain, suffering and mental anguish before his death.

II.

The Court will not repeat in full the long and heavily contested account of the bar brawl at Villari's on September 1, 2000. The events are explained in our recent opinion, dated July 27, 2005, in which we granted summary judgement in favor of Joseph Villari and Roe Corporations. (Docket Entry No. 45.) Two points of fact relevant to the instant motion, however, will be noted.

---

[4]On November 19, 2004, a Stipulation of Dismissal, signed by counsel for Plaintiff and counsel for the Borough of Somerdale, the Somerdale Police Department and Officer Christopher Campbell, was entered and all claims against Borough of Somerdale, the Somerdale Police Department and Officer Christopher Campbell were dismissed with prejudice.
On July 27, 2005, this Court dismissed with prejudice those claims against Joseph Villari and Roe Corporations, d/b/a Villari's Lakeside Inn.

First, pursuant to N.J.S.A. § 40A:14-118 (1971), the City of Camden established a police department and promulgated rules of conduct to be followed by the police force.  One such rule, located in Chapter 3, Section 6, paragraph 8, of the Law Enforcement Code of Ethics, requires all off-duty police officers, except those in specific circumstances not relevant here, to carry a department-issued firearm.  (Def. Br. App. F, 50.)  The language and intent of this paragraph closely resembles the language of Chapter 3, Section 6, paragraph 4, the rule that requires police officers to carry firearms while on duty.  *Id*.  Neither rule prohibits the use of firearms while consuming alcohol; however, Chapter 3, Section 6, paragraph 1, requires police officers to exercise "caution and the utmost care in handling firearms on and off duty." (*Id.* at 49).

Second, Borger went through an extensive hiring process before joining the police force, and then continued to receive training thereafter.  The screening process entailed, among other things, psychological, background, and personality tests.  Borger was offered a position as a police officer with the Camden County Police Department on July 10, 1998.  Borger attended the Camden County Police Academy and received training while on the force.  His disciplinary record indicates that no citizen or departmental complaints were upheld against him from his date of hire through September, 2000.

5

III.

The test for summary judgement is stated in Rule 56 of the Federal Rules.  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but. . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (citation omitted).

IV.

Section 1983 creates a private cause of action for

plaintiffs to seek redress for the deprivation of constitutional rights by state employees acting under color of state law. The Supreme Court held that in a § 1983 case, a court must determine "(1) whether the conduct complained of was committed by a person acting under color of state law and (2) whether the conduct deprived a person of rights privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 572, 575 (1981)(overruled in part on other grounds). Viewing questions of fact in the light most favorable to the non-moving party, this Court will accept for the purposes of evaluating the instant motion that the actions of Officer Borger were committed under color of law and that these actions deprived DiVigenze of rights secured by the Constitution.

The inquiry, however, does not end there. By charging the City of Camden, the C.C.P.D. and Police Chief Allenbach[5] with violating § 1983, Plaintiff's claim seeks to hold the municipality liable for the actions committed by an employee. The Supreme Court struck down municipal liability based on the theory of respondeat superior. *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 691 (1978). A municipality cannot be held liable simply because an employee is a tortfeasor.

Municipalities may only be held liable if they act in one of

---

[5]Hereafter the opinion refers to municipal liability which includes any liability of Allenbach under *Monell* for implementing any particular policy, practice or custom of the C.C.P.D.

the following three ways: (1) adopt an official policy that deprives citizens of their constitutional rights, *Monnell*, 436 U.S. at 694; (2) tolerate or adopt an unofficial custom that results in the unlawful stripping of constitutional rights, *Natale v. Camden County Correctional Facility*, 318 F.3d 575 (3d Cir. 2003); or (3) fail to "train, supervise, or discipline" their employees so as to prevent them from unlawfully depriving citizen of their constitutional rights, *City of Oklahoma v. Tuttle,* 471 U.S. 808 (1985).  *See also* Karen M. Blum and Kathryn R. Urboyna, Federal Judicial Center, Section 1983 Litigation 58-59 (1998).

    Plaintiff's claim that Defendants violated § 1983 by depriving DiVigenze of his constitutionally protected rights falls under the first and third types of liability: (1) that the C.C.P.D., under the direction of Allenbach, implemented a policy that deprived citizens of their constitutionally protected rights, and (2) that Defendants failed to adequately train, instruct, counsel, supervise and discipline officers, and acted with deliberate indifference as this lack of supervision resulted in the deprivation of decedent's rights.[6]

---

[6] The Court notes that it is aware of the *Natale* ruling and the second type of municipal liability, available in cases where the municipality tolerated an unconstitutional practice or custom. Plaintiff neither formally alleges the second type of municipal liability, nor does she provide evidence that could support a cognizable claim pursuant to *Natale*. .

V.

A municipality may be held liable when it implements a policy that is unconstitutional. But first, the evidence must show that the municipality had constructive knowledge of the adoption of the unconstitutional policy to be held liable. *Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 403 (1997); *see also Monell,* 436 U.S. at 691 (Congress intended § 1983 to impose liability only when municipalities actively encouraged or tolerated the unconstitutional deprivation of rights).

In addition, to succeed on a § 1983 claim, a plaintiff must show that there is a "affirmative link" between the policy and the deprivation. *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996). The simple act of choosing one policy over another is not enough to make the municipality or its employees liable for resultant harms. *City of Canton*, 489 U.S. at 392. The policy must be the "moving force" behind the deprivation in order for liability to attach. *Id*. at 390.

Plaintiff alleges that by requiring off-duty officers to carry firearms, Defendants deprived DiVigenze of constitutional rights. Plaintiff argues that Defendants' policy exposes citizens to dangerous situations, because no attempt is made to curtail the use of guns when police officers use alcohol.

In support of her claims, Plaintiff presents the report of

expert witness Dr. R. Paul McCauley. McCauley explains that Defendants did not employ the best practice available because there was no provision restricting the carrying of guns when off-duty officers consume alcohol. (App. H, 7).[7]

Even when viewing all questions of fact in a light most favorable to the Plaintiff, the evidence fails to demonstrate how the official policy is unconstitutional. The mere requirement that police officers carry their guns while off-duty does not, by itself, deprive citizens of their constitutional rights.[8] Plaintiff does not provide any evidence that adherence to this policy has caused the unconstitutional deprivation of rights in this or other instances.

Plaintiff has failed to show that a different policy, such as a requirement that off-duty officers abstain from drinking alcohol while carrying firearms, would have prevented the harm that befell DiVigenze. The policy was not the "moving force" behind the deprivation of rights.

---

[7] One doubts that any particular training is necessary to teach an officer that he should not be using a firearm when he is intoxicated. It is probably considerably more controversial as to whether a policy which prohibits an off-duty officer from consuming **any** alcohol while carrying a weapon is constitutionally deficient. In any case, the record contains no evidence that Officer Borger was intoxicated or impaired when he drew his gun. Thus, there is an absence of the "affirmative link" between the alleged policy and the deprivation.

[8] An example of a per se unconstitutional policy would be a requirement that pregnant women take unpaid maternity leave before it becomes medically necessary. *Monell*, 436 U.S. 658.

McCauley's report notes that Defendants employed an imperfect policy when other policies were readily available. In *City of Canton*, the Court rejected liability based on the municipality's decision to not to implement an alternative policy. 489 U.S. at 397. The Court explained that to allow lawsuits to succeed based on pure speculation that an alternative policy could have yielded different results would create a policy of "de facto respondeat superior" and engage courts in "the endless exercise of second-guessing municipal employee-training programs." *Id*. We reject any argument that liability could attach merely because the municipal actors had other alternative policies to choose from, and adopted the one that was in place on September 1, 2000.[9]

## VI.

Another variation of § 1983 liability exists when a municipality fails to train, instruct, counsel, supervise and discipline officers. *City of Canton*, 489 U.S. at 387 (finding municipal liability under § 1983 where supervisors failed to

---

[9]Plaintiff's reliance on *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) is misplaced. Taken in context, the section of *Pembaur* cited by Plaintiff explains why municipalities can be held liable for decisions made by employees vested with municipal authority. Plaintiff's position that the act of decision making itself is sufficient to incur liability is exactly the argument that the Court rejected in *Canton*. 489 U.S. at 397.

properly train employees and this failure resulted in the unconstitutional deprivation of rights). This type of liability, referred to as "failure to train," is reserved only for those instances where the municipality acted with "deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388.

Findings of deliberate indifference, as a matter of law, require that there be a history of unconstitutional behavior by municipal employees. The Supreme Court has found that municipal liability for failure to train under § 1983 cannot be inferred from a single instance of police misconduct by a non-policy making employee. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 813 (1985); C*ity of Canton,* 489 U.S. at 397 (a jury cannot infer "deliberate indifference" on the part of the trainer or supervisor from a single incident of police misconduct).

Plaintiff's failure to train claim cannot stand. Plaintiff cannot point to any actual inadequate training,[10] let alone any manifestation of deliberate indifference. The evidence presented reveals no previous incidents of a similar nature involving any police officers to which the Defendants were indifferent. Nor could the City have had any reason to know or believe that Borger

---

[10] Plaintiff's argument that off-duty officers should have been trained to not carry weapons when consuming alcohol is really a policy issue rather than a training issue, and has been discussed *supra* at Section V.

12

(or any other police officer) was being inadequately supervised. Borger had an exemplary work history, and at the time of the night in question, there were no departmental or citizen grievances lodged against him.

Deliberate indifference on the part of the Defendants cannot be established based solely on one incident, and so Plaintiff's § 1983 claim cannot proceed under a theory of failure to train, instruct, counsel, supervise or discipline officers.

## VII.

Plaintiff has also asserted a state law based negligent hiring and failure to train or supervise claim in Count X of the Complaint and a vicarious liability claim, based on the negligence of Borger, as alleged in Count VIII of the Complaint.

### A.

To sustain a negligent hiring claim, Plaintiff must demonstrate that the Defendant knew or had reason to know of the particular incompetence or dangerous attributes of Borger, and could have reasonably foreseen that such qualities created a risk of harm to others. *DiCosala v. Kay*, 91 N.J. 159, 173-74 (1982). In addition, there is a required causation element - Plaintiff must show that through the negligence of the Defendants in hiring Borger, Borger's incompetence or dangerous qualities proximately

13

caused the complained of injuries.

The record is devoid of any evidence that would suggest that Defendants had knowledge, or reason to know, that Borger had any dangerous characteristics or attributes.  Borger underwent a pre-employment background check, which included criminal history.  He passed all other screening procedures, which included a pre-employment psychological evaluation, and supplied positive character references.  The record is simply devoid of any evidence that would allow a reasonable fact finder to conclude that Defendants were negligent in hiring Borger.

B.

For the reasons set forth, *supra*, in the disucssion in Section VI, Plaintiff has also not submitted to the Court sufficient evidence to demonstrate that any triable issues of fact exist as to her common law failure to train or supervise claim.

C.

With respect to its state law vicarious liability claim, Plaintiff has set forth the elements of a negligence claim against Borger in Count VIII of the Complaint.  Specifically, she alleges that he owed a duty of care to DiVigenze to perform his police duties in a safe and reasonable manner and that he

14

breached those duties, causing injury and death.  Pursuant to N.J.S.A. 59:2-2, public entities, such as the City of Camden and the C.C.P.D., may be held vicariously liable for the negligent acts of public employees.

Since neither party has briefed the issue of whether some form of immunity which would bar the applicability of N.J.S.A. 59:2-2,[11] we will deny summary judgement as to Count VIII, but do so without ruling on the merits of Plaintiff's claim of negligence against Borger or on any immunity issue.  The Court notes that if in the future it is determined that Borger was not negligent or that he is immune from liability,[12] the City of Camden and C.C.P.D. would not be held liable.  *See, e.g., Ernst v. Borough of Ft. Lee*, 739 F. Supp. 220 (D.N.J. 1990); *Dlugosz v. Fred S. James & Co.*, 212 N.J. Super. 175 (Law Div. 1986); *Evans v. Elizabeth Police Dept.*, 190 N.J. Super. 633 (Law Div. 1983).

## VIII.

For the reasons set forth above, this Court will grant in part and deny in part Defendants' Motion for Summary Judgment.

---

[11] Plaintiff contends, and Defendants have not disputed, that she timely filed a Tort Claim Notice pursuant to N.J.S.A. 59:8-8.

[12] The Tort Claims Act provides certain forms of immunity for police officers.  *See, e.g.,* N.J.S.A. 59:3-3 (not liable for conduct when "act[ing] in good faith in the execution or enforcement of any law").

15

The federal claims under § 1983, Count IV, and the state law claims for negligent hiring and failure to train or supervise in Count X against the City of Camden, the C.C.P.D. and Allenbach will be dismissed with prejudice.  However, the state law claim against the City of Camden and C.C.P.D. in Count VIII will remain, as well as all claims against Defendant, Robert Borger, individually.  An appropriate order will follow.


Date:   August 15, 2005

                                          s/*Joseph E. Irenas*
                                          **JOSEPH E. IRENAS, S.U.S.D.J.**